UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CACHET FINANCIAL SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>C&J ASSOCIATES, INC., et al.,<br><br>Defendants. | Case No. 5:16-cv-06862-EJD<br><br>**ORDER DENYING MOTION FOR DISCHARGE FROM FURTHER LIABILITY RE INTERPLEADED FUNDS; DENYING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 157, 158 |

I. Introduction

This is a statutory interpleader action initiated by Cachet Financial Services ("Cachet") against eighty-two defendants to resolve conflicting claims to $1,050,761.90 (the "Interpleaded Funds"), which Cachet deposited with this Court. Cachet moves for an order (1) discharging Cachet from any further responsibility and any liability with respect to the Interpleaded Funds and (2) imposing a permanent injunction from the filing or prosecution of any action or the assertion of claims against Cachet as to those Interpleaded Funds. Cachet also moves for recovery of $78,075.50 in attorneys' fees and $10,628.52 in costs. Defendants Pacific Diversified Insurance Services, Inc. ("Pacific") and Robert Talbott, Inc. ("Talbott") (collectively "Defendants") oppose the motions. The Court finds it appropriate to take the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). Based upon all pleadings filed to date, Cachet's motions are denied.

CASE NO.: 5:16-CV-06862-EJD
ORDER DENYING MOTION FOR DISCHARGE FROM FURTHER LIABILITY RE INTERPLEADED FUNDS; DENYING MOTION FOR ATTORNEYS' FEES AND COSTS

1

## II. BACKGROUND

Cachet is an electronic Automated Clearing House ("ACH") third party service provider that processes a variety of electronic funds transfers ("EFT") in the form of payroll ACH transfers. The transfers commonly take the form of direct deposit payroll and electronic payment processing. The interpleaded funds came into Cachet's possession as a result of its contractual relationship with defendant Pinnacle Workforce Solutions ("Pinnacle"), a company that provides payroll processing services to employers. The remaining eighty-one Defendants are employers who used Pinnacle's payroll services and have claims to the Interpleaded Funds.

Pursuant to a "Remarketer Agreement," Cachet provided ACH transaction services for Pinnacle. Pinnacle provided weekly instructions directing Cachet to debit specific accounts from Pinnacle's employer clients, to aggregate their funds within Cachet's general clearing account, and to credit specific accounts for the purpose of making ACH payroll payments to the employees of Pinnacle's employer clients.

On or about September 21, 2016, Pinnacle allegedly submitted a written instruction file to Cachet that specified the ACH debits and credits Cachet was to execute. Upon transferring the funds as directed by Pinnacle, however, Cachet determined that Pinnacle allegedly had insufficient funds in the general clearing account to credit the employee accounts of Pinnacle's employer clients. Cachet alleges that in accordance with the ACH rules promulgated by the National Automated Clearing House Association and its agreement with Cachet's bank, Cachet provided its own funds to cover the shortfall and credited the employees' accounts using other funds in the clearing account. Cachet alleges that Pinnacle was required to, but failed to fully repay Cachet for the shortfall, which totaled $835,748.83.

On or about September 27, 2016, Pinnacle submitted another ACH instruction file and the employers' accounts were debited. Cachet, however, refused to issue the requested credits to various employees' accounts unless Pinnacle cleared the alleged shortfall from the previous week. Pinnacle allegedly refused Cachet's demand to cure the shortfall and ceased communication with

Cachet. Cachet alleges that it therefore froze Pinnacle's funds and alerted the authorities, including the Federal Bureau of Investigation. According to Cachet's investigation, Pinnacle had been engaging in fraud and is now defunct.

Cachet alleges that Pinnacle's refusal to cure the shortfall constituted a breach of the Remarketer Agreement. Accordingly, Cachet invoked its alleged contractual and common law rights of offset[1], retaining the recently debited funds to recover the $835,748.83 Cachet had credited to employees the week before. After the offset, there remained $1,050,761.90 in the clearing account.

Cachet filed the instant interpleader action on November 29, 2016. Cachet sought to secure waivers of service, signed acknowledgments of service or personal service for each of the defendants. Numerous defendants informed Cachet's counsel that they did not want to be involved in this suit and those defendants have been dismissed from the action. Cachet brought a motion for an order allowing it to deposit the Interpleaded Funds with the Court, which was granted. Cachet also brought a motion for an order appointing a Special Master under Federal Rule of Civil Procedure 53 to oversee a reasonable claims and distribution process, which was granted. The Special Master is currently overseeing the claims process.

Three Defendants, Pacific, Talbott and Pinnacle Manufacturing Corp. have filed counterclaims against Cachet seeking to recover the amounts Cachet debited from their respective accounts that were used by Cachet to offset Pinnacle's obligation to Cachet. These three Defendants allege that at the time Cachet debited their accounts Cachet had no intention of crediting their employees' accounts with Defendants' funds. Litigation of the counterclaims is stayed pending completion of the Special Master's claim determination process and submission of

---

[1] Cachet's alleged contractual right to offset is based on the following clause in the Remarketer Agreement: "[Pinnacle] agrees to make every reasonable effort to assist CACHET, as may be requested in the collection of outstanding returned EFT transactions from the Client as a result of NSF or other funding problems. This assistance shall include but not be limited to withholding payroll processing or other services performed on behalf of Client, offsetting trust funds held on behalf of Client and other supportive efforts as may be required." Complaint, Ex. 1, p. 21.

the Special Master's final report on distribution of the Interpleaded Funds.

## III.  DISCUSSION

### A.  Discharge of Liability

Title 28 United States Code Section 2361 governs interpleader actions.  The statute provides in pertinent part that "a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property . . . involved in the interpleader action until further order of the court." Further, Section 2361 provides that the court "shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. §2361.  An interpleader action usually involves two stages.  First, the court decides whether the requirements for a statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund.  Lee v. West Coast Life Ins. Co., 688 F.3d 1004, 1009 (9th Cir. 2012).  Second, "[i]f the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants."  Id.

Cachet asserts that it has satisfactorily established it is entitled to be discharged from any further liability with respect to the Interpleaded Funds.  Cachet has deposited the Interpleaded Funds with the Court, disclaims any interest in the Funds and does not contest any parties' claim to the Funds.  Accordingly, Cachet seeks an order discharging Cachet from any further responsibility and liability with respect to the Interpleaded Funds and imposing a permanent injunction from the filing or prosecution of any action or the assertion of claims against Cachet with respect to the Interpleaded Funds.

Defendants raise several arguments in opposition to Cachet's motion, all of which center on the propriety of Cachet's offset.  First, Defendants contend that Cachet should not be discharged because Cachet kept $835,748.83 of the $1,886,510.73 debited from Pinnacle customer accounts on September 27, 2016, before depositing the remaining $1,050,761.90 with the Court.

CASE NO.: 5:16-CV-06862-EJD
ORDER DENYING MOTION FOR DISCHARGE FROM FURTHER LIABILITY RE
INTERPLEADED FUNDS; DENYING MOTION FOR ATTORNEYS' FEES AND COSTS

4

Defendants accuse Cachet of debiting funds from Pinnacle customer accounts with no intention of using any of the money to pay the employees of Pinnacle's customers. They also fault Cachet for making itself whole by taking the offset before depositing the rest of the funds with the Court. Citing Metal Transport Corp. v. Pacific Ventura S.S. Corp., 288 F.2d 363 (2nd Cir. 1961), Defendants argue that the Court does not have jurisdiction over this interpleader action because Cachet did not deposit the entire $1,886.510.73 that it collected. Second, Defendants contend that a discharge is not appropriate and premature because of the cross-claims pending against Cachet (Docket Nos. 140, 149, 150). Third, Defendants contend that Cachet has unclean hands because Cachet withdrew money from Pinnacle's customer accounts with no intention of using the money to pay the employees of Pinnacle's customers. Fourth, Defendants argue that Cachet's motion for discharge is premature because the Special Master has not assessed whether Cachet should be required to deposit the funds it retained as an offset.

"As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants." Id. at 365; see also A&E Television Networks, LLC v. Pivot Point Entertainment, LLC, 771 F.Supp.2d 296 (S.D. N.Y. 2011). "Where the offsets to the sum to be deposited are 'controverted, substantial and uncertain' jurisdiction should not lie, [citation omitted], unless the stakeholder deposits the largest amount that is in dispute." Nestle Beverage Co. v. Bayerische Vereinsbank S.A., No. 92-1571 MHP, 1993 WL 96584, at *2 (N.D. Cal. March 24, 1993). "If the stakeholder chooses to deposit the largest amount that is in dispute to achieve jurisdiction, then the stakeholder should plead that the amount deposited is disputed and that only a lesser amount is admitted as being due to the claimants." Id.

Here, Defendants have raised the jurisdictional issue in the context of Cachet's motion for discharge rather than filing a motion to dismiss for lack of jurisdiction. Nevertheless, subject matter jurisdiction is not waivable and the Court has a duty to determine its jurisdiction *sua sponte*. Id.

According to the Complaint For Interpleader, Cachet has deposited a sum smaller than that claimed by the claimants. Cachet has deposited $1,050,761.90 with the Court and yet identifies over eighty claimants with claims far in excess of the Interpleaded Funds. Indeed, a single claimant, Christopher Ranch LLC allegedly has a claim for $1,125,859.43. Therefore, subject matter jurisdiction is lacking. See Metal Transport Corp., 288 F.2d at 365; Nestle Beverage Co., 1993 WL 96584, at *2; A&E Television Networks, LLC, 771 F.Supp.2d at 300.

Accordingly, no later than December 15, 2017, Cachet shall deposit sufficient funds to cover the claims identified in the Complaint For Interpleader. If such deposit is not made, this interpleader action will be dismissed for lack of jurisdiction.

B. Attorneys' Fees and Costs

In general courts have discretion to award fees to a disinterested stakeholder in an interpleader action. Abex Corp. v. Ski's Enterprises, Inc., 748 F.2d 513, 516 (9th Cir. 1984). Fees are usually ordered paid from the interpleaded fund. Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp., 306 F.2d 188 (9th Cir. 1962). Attorneys' fees awards are limited to those fees that are incurred in filing the action and pursuing the plan's release from liability. Id. at 194. Costs may also be awarded to the disinterested stakeholder. Id. Compensable costs "include, for example, preparing the complaint, obtaining service of process on the claimants to the fund and preparing an order discharging the plaintiff from liability and dismissing it from the action." Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000) (citing Schirmer, supra).

Cachet seeks an award of fees and costs incurred in litigating this action. Cachet does not, however, seek recovery of fees and costs incurred in connection with the three pending counterclaims. Cachet's counsel, Terry L. Higham of Barton, Klugman & Oetting, LLP, submitted a declaration in support of the request for fees and costs. Counsels' representation of Cachet in this action included, but is not limited to: assisting in the post-incident investigation of Defendant Pinnacle; identifying all potential 80 claimants for the Interpleaded Funds; preparing

and filing the complaint, motions, the application to deposit the Interpleaded Funds, and other documents; devising a plan for effective case management through the appointment of a special master; communicating with the special master; endeavoring to obtain the claimants' agreement to waive service of process; preparing and effecting service of process for the claimants who did not agree to waive service of process; and making court appearances. Counsel represents that the firm expended 182.9 hours to complete the work outlined above. At a reduced hourly rate of $450/hour for counsels' work and a reduced hourly rate of $140/hour for a paralegal, the total fee request is $78,075.50.

Counsel also represents that the firm incurred $10,628.52 in costs for executing personal service of process on 16 of the 80 Defendants throughout the United States, costs for overnight and postage charges in communicating with 64 Defendants, the client and the Court, costs for computer-assisted research to aid in the identification of agents for service of process for the 80 defendants, research of relevant legal concepts, travel costs for two court appearances, photocopy charges, telephone charges and filing fees. The Special Master has also submitted a declaration in support of Cachet's request for fees and costs.

Defendants oppose Cachet's request for fees and costs on three grounds. First, Defendants assert that Cachet is not a disinterested stakeholder because Cachet kept $835,748.83 of the $1,886,510.73 debited from Pinnacle customer accounts on or about September 27, 2016, before depositing the remaining $1,050,761.90 with the Court. Defendants fault Cachet for "now attempting to use the interpleader process as cover for taking money that it was not entitled to take and for giving itself a first position claim for the money ahead of all other claimants." Pacific's Opposition, p. 2. Second, Defendants contend that an award of fees and costs is not appropriate because Cachet did not deposit the $835,748.83. Finally, Defendants contend that Cachet's fee claim is excessive.

In response, Cachet contends that it was legally entitled to the offset and fully disclosed the offset in the Complaint For Interpleader. Further, Cachet points out that the $835,748.83 offset is

CASE NO.: 5:16-CV-06862-EJD
ORDER DENYING MOTION FOR DISCHARGE FROM FURTHER LIABILITY RE INTERPLEADED FUNDS; DENYING MOTION FOR ATTORNEYS' FEES AND COSTS
7

the subject of Defendants' two counterclaims.  Cachet asserts that if these Defendants are not made whole through the distribution of the Interpleaded Funds, they will be free to litigate their counterclaims after the Court lifts the stay.  Cachet also contends that the requested fees and costs are supported by a detailed billing summary submitted to the Court and are reasonable considering that Cachet was required to identify and obtain service on 80 separate claimants.

Cachet's motion for fees and costs is denied without prejudice at this time because the Court lacks subject matter jurisdiction over this action unless and until Cachet deposits sufficient funds to cover the claims identified in the Complaint For Interpleader.

### IV.  CONCLUSION

For the reasons set forth above, Cachet's motion for discharge is DENIED.  No later than December 15, 2017, Cachet shall deposit sufficient funds to cover the claims identified in the Complaint For Interpleader.  If such deposit is not made, this interpleader action will be dismissed for lack of jurisdiction.   Cachet's motion for attorneys' fees and costs is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated:  November 15, 2017

_____
EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:16-CV-06862-EJD
ORDER DENYING MOTION FOR DISCHARGE FROM FURTHER LIABILITY RE INTERPLEADED FUNDS; DENYING MOTION FOR ATTORNEYS' FEES AND COSTS
8